Lanzinger, J.,
concurring in part and dissenting in part.
{¶ 56} I concur in the judgment of the court and in the first and third syllabus paragraphs of the majority’s opinion; however, I dissent from the majority’s *476 holding that, by not specifying a mens rea, R.C. 2911.01(A)(3) plainly indicates an intent to impose strict liability.
{¶ 57} R.C. 2901.21(B) establishes the mens rea of recklessness as the default standard of liability when no mens rea is specified: “When the section [defining an offense] neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.” (Emphasis added.)
{¶ 58} The majority has mistakenly held that the lack of mens rea alone is sufficient to indicate an intention to impose strict liability, stating , “By choosing language in R.C. 2911.01(A)(3) that makes it a crime to merely inflict or attempt to inflict serious physical harm, as opposed to requiring a purpose or intent to injure, the General Assembly * * * has indicated its purpose to impose strict liability.” Majority opinion at ¶ 51. In other words, the majority rewrites the statute to say that unless there is “specific intent,” the default standard is strict liability, and no mental state need be proven. But to “inflict or attempt to inflict serious physical harm,” as that phrase is used in R.C. 2911.01(A)(3), implies action on the part of a defendant that requires a mental state of some degree, unless it has been clearly dispensed with. The General Assembly explicitly provides in R.C. 2901.21(B) that recklessness is the default mens rea, unless there is a clear indication that strict liability is intended.
{¶ 59} In concluding that R.C. 2911.01(A)(3) plainly indicates an intent to impose strict liability, the majority purports to follow the approach outlined in State v. Wac (1981), 68 Ohio St.2d 84, 22 O.O.3d 299, 428 N.E.2d 428, and State v. Maxwell, 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242. But the majority overextends the holdings of those cases so as to contradict the language of R.C. 2901.21(B). Although we have stated in Maxwell, at ¶ 22, that we must consider sections rather than divisions to see whether R.C. 2901.21(B) can operate to supply the mental element of recklessness, the statute tells us that we must examine “the section defining an offense ” to determine whether that definition “plainly indicates a purpose to impose strict criminal liability for the conduct described in the section.” (Emphasis added.) R.C. 2901.21(B). The majority concludes that, regardless of the context, a single reference to a mental state (knowingly, in R.C. 2911.01(B)) automatically indicates a purpose to impose strict liability in R.C. 2911.01(A)(3), which does not explicitly name a mental state.
{¶ 60} The first two divisions in R.C. 2911.01, however, relate to two different courses of conduct: (A) refers to attempting, committing, or fleeing after a theft offense, while (B) concerns removing a deadly weapon from a law-enforcement officer. The majority’s reading ignores the plain language of R.C. 2901.21(B), which states that we are to analyze the language defining an offense to determine whether that definition plainly indicates a purpose to impose strict liability for a *477 particular course of conduct. Because the definition of the offense is found solely in R.C. 2911.01(A), the language of R.C. 2911.01(B) is inapplicable to the question of whether the General Assembly has plainly indicated a purpose to impose strict criminal liability for the offense defined in (A).
{¶ 61} This method of analysis is consistent with Wac and Maxwell. In those cases, we examined the definitions of each offense, just as R.C. 2901.21(B) requires, to determine whether the General Assembly plainly indicated a purpose to impose strict liability for the specific conduct involved. In analyzing R.C. 2915.02 in Wac, we looked only at the language in R.C. 2915.02(A)(1), which criminalizes bookmaking. Id., 68 Ohio St.2d at 86, 22 O.O.3d 299, 428 N.E.2d 428. In determining the proper mens rea, we did not consider the other, very different forms of conduct defined elsewhere in R.C. 2915.02, such as establishing, promoting, or operating a game of chance conducted for profit (R.C. 2915.02(A)(2)) or betting (R.C. 2915.02(A)(4)). By the same principle, our consideration of the proper mens rea for R.C. 2915.03 reflected the narrow focus of that statute, both divisions of which deal with the same conduct: using or occupying premises for gambling. Id. at 86-87.
{¶ 62} Similarly, in Maxwell, we examined only the language in R.C. 2907.321(A)(6), which defined the offense of bringing child pornography into the state. We ignored the other offenses defined in R.C. 2907.321, such as creating child pornography (R.C. 2907.321(A)(1)) or buying, purchasing, possessing, or controlling child pornography (R.C. 2907.321(A)(5)).
{¶ 63} The mere lack of a mental state in R.C. 2911.01(A)(3) does not plainly indicate to me a purpose to impose strict criminal liability for the conduct of inflicting or attempting to inflict serious physical harm on another during the attempt or commission of a theft offense. At the very least, the state should be charged with proving that the conduct was reckless. “A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a knotvn risk that such circumstances are likely to exist.” (Emphasis added.) R.C. 2901.22(C).
{¶ 64} We explained how the General Assembly shows an intent to dispense with a mens rea and impose strict liability in State v. Lozier, 101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770. Under R.C. 2925.03(C)(5)(b), the offense of trafficking in LSD is a fourth-degree felony if committed “in the vicinity of a school or in the vicinity of a juvenile.” To determine the correct mens rea for the “vicinity” element, we looked to R.C. 2925.01, which defines these phrases. Under R.C. 2925.01(BB), an offender is guilty of committing the offense in the vicinity of a juvenile “regardless of whether the offender knows the age of the *478 juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense.” We stated that this language “makes it abundantly clear that the offender’s mental state is irrelevant in determining whether the offender has committed an offense ‘in the vicinity of a juvenile.’ ” Lozier at ¶ 36. We then turned to the definition of “in the vicinity of a school,” as it then existed.[2] We noted that, by contrast, an offender was guilty of committing the offense in the vicinity of a school if the offense is committed “on school premises, in a school building, or within one thousand feet of the boundaries of any school premises.” Former R.C. 2925.01(P), 149 Ohio Laws, Part V, 10175, 10187. No mens rea appeared, and, unlike the “vicinity of a juvenile” definition, it had no language stating that the offender is guilty regardless of any knowledge on behalf of the offender. Thus, the General Assembly had not indicated that trafficking in LSD in the vicinity of a school was a strict-liability offense, and the default mental state of recklessness applied. Lozier, 101 Ohio St.3d 161, 803 N.E.2d 770, at ¶ 45.
{¶ 65} The majority also relies upon State v. Lester, 123 Ohio St.3d 396, 2009-Ohio-4225, 916 N.E.2d 1038, and State v. Wharf (1999), 86 Ohio St.3d 375, 715 N.E.2d 172, as support for its conclusion that R.C. 2911.01(A)(3) plainly indicates a purpose to impose strict liability. Wharf examines the completely separate offense of robbery as defined in R.C. 2911.02(A)(1), and Lester examines the “deadly weapon” version of aggravated robbery under R.C. 2911.01. Therefore, neither opinion is relevant to the issue of whether the General Assembly plainly indicated a purpose to impose strict liability in R.C. 2911.01(A)(3).
{¶ 66} Furthermore, Lester contradicts both Lozier and R.C. 2901.21(B) by holding that the lack of a mens rea in R.C. 2911.01(A)(1) plainly indicates a purpose to impose strict liability. See Lester, 123 Ohio St.3d 396, 2009-Ohio-4225, 916 N.E.2d 1038, at ¶ 44-58 (Lanzinger, J., concurring in judgment only).
{¶ 67} Since the General Assembly has not specified a degree of culpability in its definition of the offense of inflicting or attempting to inflict serious physical harm on another during the attempt or commission of a theft offense, I would take the General Assembly at its word and hold that the default mens rea of recklessness is applicable to R.C. 2911.01(A)(3). Thus, I respectfully dissent with respect to the portion of the majority opinion that concludes that aggravated robbery in violation of R.C. 2911.01(A)(3) is a strict-liability offense.
*479 Julia R. Bates, Lucas County Prosecuting Attorney, and David F. Cooper, Assistant Prosecuting Attorney, for appellee.
John F. Potts, for appellant.
Ron O’Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Franklin County Prosecutor.
{¶ 68} Because the indictment in this case tracked the language of R.C. 2911.01(A)(3), which fails to specify a mental state, the indictment is not defective for failure to identify a mental state. I would hold that Horner was on notice that the default mens rea of recklessness applied under R.C. 2901.21(B) and would affirm the judgment of the court of appeals that the indictment was not defective. I therefore concur only in the judgment of the court and in the first and third syllabus paragraphs of the majority opinion.

. R.C. 2925.01(P) was amended shortly after Lozier was decided to add language similar to that in division (BB), making it explicit that the offender need not be aware that he is near a school to be guilty of the offense.